# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| VIRGINIA MORGAN,<br><br>    Plaintiff,<br><br>v.<br><br>CARRINGTON MORTGAGE SERVICES,<br><br>And<br><br>BANK OF AMERICA, N.A.,<br><br>    Defendants. | Case No. CIV-16-060-RAW |

## **ORDER & OPINION**

On July 21, 2016, Plaintiff filed her First Amended Complaint against Carrington Mortgage Services (hereinafter "Carrington") and Bank of America, N.A. (hereinafter "BANA"), alleging discrimination on the basis of disabilities in the servicing of her federally insured mortgage loans and retaliatory discrimination in the provision of lending services. Plaintiff includes claims for violations of: (1) the Fair Housing Act, 42 U.S.C. § 3601, *et seq*. (hereinafter "FHA"); the Real Estate Settlement Procedures Act, 12 U.S.C. § 2605, *et seq*. (hereinafter "RESPA"); and the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq*. (hereinafter "FDCPA").

Plaintiff seeks: (1) actual and punitive damages; (2) declaratory judgment that Defendants' policies and practices as alleged violate the FHA, the RESPA and the FDCPA; (3) permanent injunctive relief enjoining Defendants from engaging in the illegal acts alleged; (4) pre- and post-judgment interest; (5) attorneys' fees, costs and expenses; and (6) other relief as the

court deems just and proper. Now before the court are the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by Carrington [Docket No. 37] and the motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) filed by BANA [Docket No. 62].

**STANDARD OF REVIEW**

For purposes of the motions to dismiss, the court accepts as true all of the factual allegations in Plaintiff's First Amended Complaint and construes those facts in the light most favorable to Plaintiff. See Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc., 521 F.3d 1278, 1284 (10th Cir. 2008). Of course, the court does not accept as true conclusory statements or legal conclusions. "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To survive the motions to dismiss, the First Amended Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plaintiff must nudge her "claims across the line from conceivable to plausible." Twombly, 550 U.S. at 570. The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678. "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." Id. (quoting Twombly, 550 U.S. at 557) (internal quotations omitted). In other words, the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct." Id. at 679.

> [T]he Twombly / Iqbal standard is a middle ground between heightened fact pleading, which is expressly rejected, and allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do. In other words, Rule 8(a)(2) still lives. Under Rule 8, specific facts are not necessary; the statement need only give the defendant fair notice of what the claim is and the grounds upon which it rests.

Burnett v. Mortgage Elec. Registration Sys., Inc., 706 F.3d 1231, 1235-36 (10th Cir. 2013) (quoting Khalik v. United Air Lines, 671 F.3d 1188, 1191 (10th Cir. 2012)).

In a case against multiple defendants, "it is particularly important . . . that the complaint make clear exactly *who* is alleged to have done *what* to *whom*, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations . . . ." Robbins v. Oklahoma, 519 F.3d 1242, 1247, 1248 (10th Cir. 2008) (emphasis in original). Otherwise, the First Amended Complaint would fail to provide fair notice and to present a plausible right to relief.

**ALLEGATIONS**

In her First Amended Complaint, Plaintiff alleges that she is elderly and disabled, suffering from a heart disorder, cardiopulmonary disease and other ailments that substantially limit her ability to work, to breathe and to engage in other major life activities. Plaintiff's monthly income is from Social Security and her small business. In chronological order, Plaintiff alleges as follows:

- In 2008, she and her husband obtained a federally related home mortgage loan through a now defunct mortgage lender.
- In August 2009, BANA became the servicer for their mortgage.
- Beginning in April 2011, after her husband was laid off from his job, Plaintiff submitted several requests for mortgage assistance to BANA. On these requests, Plaintiff included

birthdates for her and her husband, that the request was made due to a decrease in income and increased health costs and that a portion of her income was from SSI benefits. BANA denied each request on the grounds that she failed to timely return paperwork, but did not identify which documents were untimely.

- In March 2012, Plaintiff enlisted the assistance of a Housing Counselor with the Metropolitan Tulsa Urban League (hereinafter "MTUL Counselor"). The MTUL Counselor submitted all necessary documents requested to BANA in a timely manner. BANA denied Plaintiff for loss mitigation assistance on the basis that the she failed to timely provide the requested paperwork.

- In early July 2012, after Plaintiff complained, BANA reopened the file and extended the time for document submission. Through her MTUL Counselor, Plaintiff provided all documents by July 16, 2012. BANA denied the request for mortgage assistance on July 25, 2012, stating that all documents had not been received. Upon discovery that all documents had been timely provided, BANA refused to reopen Plaintiff's file and instead required her to begin the process again and to submit all new documents.

- At the same time Plaintiff applied for assistance through MTUL, her daughter, who was forty years old and without any disabilities, applied for and was approved for mortgage assistance with BANA.

- After BANA denied Plaintiff's request for mortgage assistance in July 2012, her husband secured new employment.

- In August 2012, Plaintiff submitted a new request for mortgage assistance with BANA, reporting her husband's wages from his new job. Their verifiable income was

approximately $3,000 monthly. To date, BANA has not informed Plaintiff of the status of her August 2012 request for mortgage assistance.

- On October 9, 2012, BANA initiated foreclosure proceedings against Plaintiff. Plaintiff, without her husband, appeared with counsel.

- Plaintiff's counsel notified BANA of her representation on November 5, 2012.

- On October 4, 2013, BANA prevailed in the foreclosure action by way of summary judgment.

- BANA ceased to pay property taxes on Plaintiff's property after 2013. Beginning in 2014, the property taxes were tendered by Lereta Tax Services.

- On July 17, 2014, BANA procured a Special Execution and Order for sale from the District Court of Muskogee County.

- At some point between February 28, 2014 and July 31, 2014, BANA transferred its servicing rights for Plaintiff's mortgage to Carrington.[1]

- By letter dated August 12, 2014, Carrington notified Plaintiff that BANA transferred its servicing rights to her mortgage to Carrington, that effective July 31, 2014, BANA would no longer accept her mortgage payments and that effective August 1, 2014, Carrington would begin accepting her mortgage payments. BANA did not notify Plaintiff of the servicing transfer.

- After Carrington became the servicer of Plaintiff's mortgage, it did not acknowledge her August 2012 request for mortgage assistance.

- On September 18, 2014, BANA purchased the home of Plaintiff at a Sheriff's sale for $40,000.

---

[1] Plaintiff also alleges this transfer happened "[a]t some point in 2013 or 2014." See Docket No. 34, pp. 7 and 8, ¶ 27 and 32.

5

- On December 22, 2014, Plaintiff mailed a housing discrimination complaint to the Department of Housing and Urban Development (hereinafter "HUD") solely against BANA, based upon disability discrimination.

- On March 16, 2015, pursuant to Carrington's offer, Plaintiff's counsel completed and submitted a request for mortgage assistance to Carrington by certified mail with a return receipt requested and delivery restricted to the addressee. On the request for mortgage assistance, Plaintiff and her husband reported verifiable monthly income in excess of $5,000.

- On March 23, 2015, Carrington received the request for mortgage assistance, pursuant to the return receipt. Plaintiff did not receive any written correspondence from Carrington acknowledging receipt of the request for mortgage assistance or denying the request. Carrington continued to send Plaintiff monthly statements for the mortgage loan.

- On April 15, 2015, HUD officially filed Plaintiff's housing discrimination complaint and notified BANA of the complaint.

- In a letter dated June 1, 2015 addressed to Plaintiff's husband and all occupants of the property, BANA offered them $1,000 to voluntarily vacate the property and leave it in good condition before the Sheriff's sale confirmation or face eviction by BANA.[2] Neither Defendant presented the same offer to Plaintiff's counsel. Additionally, at no time prior to the June 1, 2015 offer did Carrington disclose to Plaintiff the existence of an agency relationship between Carrington and BANA.

- On June 19, 2015, BANA notified Plaintiff's counsel of a hearing on its motion to confirm the Sheriff's sale to be held on June 25, 2015.

---

[2] Plaintiff first alleges the letter was sent by BANA's counsel. Later, Plaintiff alleges the letter was sent by Carrington's counsel. See Docket No. 34, pp. 9 and 12, ¶ 42 and 62.

- By verbal agreement on June 19, 2015, counsel for "both parties"[3] agreed to continue the proceedings until after July 10, 2015 because of Plaintiff's counsel scheduling conflicts, including an out of state funeral.
- On June 25, 2015, BANA appeared in court and obtained a default order of confirmation of sale against Plaintiff. BANA did not disclose the verbal agreement to continue the hearing to the court.
- On June 29, 2015, BANA procured a Writ of Assistance, delivered it to the Sheriff of Muskogee County and served it on Plaintiff, giving her seventy-two hours to vacate the property.
- On June 29, 2015, Plaintiff's counsel contacted BANA's counsel. BANA's counsel offered to provide Plaintiff ten additional days to move out, but refused to vacate the default order despite their verbal agreement, stating the judge would have granted it anyway.
- On July 10, 2015, Plaintiff's counsel filed a motion to vacate the default confirmation of sale. BANA conceded, and the court vacated the judgment.
- On September 4, 2015, BANA filed its assignment of bid and renewed motion for confirmation of the Sheriff's sale. Plaintiff filed objections, noting that BANA was no longer the mortgage servicer.
- In its motion to confirm the Sheriff's sale dated September 15, 2015, BANA identified Carrington as the true purchaser of Plaintiff's property.
- On October 15, 2015, BANA's counsel requested settlement terms from Plaintiff. Plaintiff' counsel advised that Plaintiff wished to remain in the home, that she had

---

[3] From the previous paragraph, it appears Plaintiff is referring to her counsel and BANA's counsel.

already submitted a request for mortgage assistance to Carrington in March 2015 and had not heard from Carrington on the matter. BANA's counsel agreed to inquire about the application, to determine if a modification could be accomplished to prevent further unnecessary expenses and to contact Plaintiff's counsel with the response. Neither BANA, nor Carrington provided any settlement terms as promised or responded to the request for mortgage assistance.

- On December 14, 2015, BANA rescheduled the hearing on the motion to confirm the Sheriff's sale to be held on December 17, 2015. BANA provided Plaintiff with two days' notice of the proceeding. Plaintiff's counsel had the hearing continued until January 19, 2016.
- On January 19, 2016, the District Court of Muskogee County confirmed the sale.
- On January 29, 2016, BANA moved the court to issue a writ of assistance to direct that Plaintiff vacate the property.
- On February 18, 2016, Plaintiff filed the instant action.
- On February 19, 2016, Plaintiff filed her appeal of the confirmation of the Sheriff's sale with the Oklahoma Supreme Court.
- On February 23, 2016, the Muskogee County Sheriff filed the return of the writ of assistance.
- Plaintiff's spouse passed away six days after they were dispossessed from their home.

Ultimately, Plaintiff alleges that BANA conducted the Sheriff's sale illegally, that the Defendant's actions were intentional, willful, knowing and were in callous and reckless disregard for her rights and that she suffered extreme emotional distress, pain and suffering, embarrassment, humiliation, anxiety and greatly exacerbated effects of her disabling conditions.

**ANALYSIS**

*Rooker Feldman Doctrine & Issue and Claim Preclusion*[4]

BANA first moves for dismissal pursuant to Rule 12(b)(1), arguing that Plaintiff's claims are inextricably intertwined with the Muskogee County District Court's orders and judgment and are thus barred by the Rooker-Feldman doctrine. BANA also argues that Plaintiff's claims are barred by the doctrines of issue and claim preclusion. Alternatively, BANA requests that the court dismiss the action pursuant to the Colorado River doctrine, as the claims are being actively litigated in the Oklahoma courts.

Plaintiff argues that the matters asserted in this litigation are not "even remotely connected to the state court foreclosure action." She asserts that these issues are not before any state court and that if she wanted to litigate these claims under the equivalent state law, she would have to do so in an action that is separate from the state foreclosure action.

The Rooker-Feldman doctrine was first applied in Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), then again sixty years later in District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). The doctrine merely recognizes that federal district courts are not authorized to exercise appellate judgment over state-court judgments. Exxon Mobil Corp. v. Suadi Basic Indus. Corp., 544 U.S. 280, 292 (2005) (citation omitted). The Rooker-Feldman

---

[4] When a defendant challenges jurisdiction pursuant to Rule 12(b)(1), the court may consider evidence outside the pleadings without transforming the motion into a motion for summary judgment. Davis ex rel. Davis v. United States, 343 F.3d 1282, 1296 (10th Cir. 2003). Additionally, the court may consider materials in the state court file and documents central to Plaintiff's claims and referred to in the First Amended Complaint without converting a Rule 12(b)(6) motion to a motion for summary judgment. Pace v. Swerdlow, 519 F.3d 1067 (10th Cir. 2008). BANA attached to its motion a 114 page exhibit, including materials from the state-court action and documents central to Plaintiff's claims and referenced in the First Amended Complaint. Docket No. 62, Exh. 1. The court has considered those pages in its ruling on these arguments.

doctrine is very narrow. In fact, in Exxon, the Supreme Court noted it had only applied the doctrine twice – in Rooker and in Feldman. Id. at 283.

The Supreme Court has repeatedly held that "the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." Id. at 292 (citations omitted). Rooker-Feldman applies only when a plaintiff requests that a federal court undo a state-court judgment in her favor. On the other hand, "[c]omity or abstention doctrines may, in various circumstances, permit or require the federal court to stay or dismiss the federal action in favor of the state-court litigation." Id. at 292 (citing, *inter alia*, Colorado River Water Conservation Dist. v. United States, 424 U.S. 800 (1976)).

The Tenth Circuit in Bolden v. Topeka, Kansas, 441 F.3d 1129 (10th Cir. 2006) noted the confusion surrounding the Rooker-Feldman doctrine and discussed it at length. The Bolden court illustrated with the following hypothetical scenario:

> To illustrate, say a father was deprived of custody of his child by a state-court judgment. If he files suit in federal court, seeking to invalidate the state-court judgment on the ground that the state-court proceedings deprived him of due process or that the judgment was otherwise contrary to federal law, his suit would be barred by Rooker–Feldman; the suit usurps the Supreme Court's exclusive appellate jurisdiction because it seeks to set aside the judgment based on a review of the prior proceedings. If, however, the father simply brought suit in federal court seeking custody of his child, without raising any complaint about the state-court proceedings, Rooker–Feldman cannot be invoked; his federal claim would have been the same even in the absence of the state-court judgment. A myriad of doctrines, including res judicata, would almost certainly bar the suit. But because he is not seeking to overturn the state-court judgment, Rooker–Feldman is inapplicable, regardless of whether a favorable judgment in federal court would be inconsistent with that judgment and would "den[y] a legal conclusion that [the] state court has reached." *Exxon Mobil,* 125 S.Ct. at 1527 (internal quotation marks omitted).

Bolden, 441 at 1145.

While Plaintiff does allege in paragraph 85 of her First Amended Complaint that "BANA conducted the Sheriff Sale illegally" and in paragraph 53 that "the District Court of Muskogee confirmed the sale" on January 19, 2016, Plaintiff is not explicitly seeking to overturn the state-

10

court judgment. Instead, she seeks a declaratory judgment that Defendants' policies and practices as alleged violate the FHA, the RESPA and the FDCPA; permanent injunctive relief enjoining Defendants from continuing to engage in the illegal acts alleged; and damages for the harm she suffered as a result of their illegal acts alleged. Rooker-Feldman is not applicable.

As the Tenth Circuit cautioned, however, other doctrines may bar this suit. BANA argues that Plaintiff's claims are barred by the doctrines of issue and claim preclusion. The preclusive effect of the state-court action is governed by state law. Valley View Angus Ranch, Inc. v. Duke Energy Field Srvcs., Inc., 497 F.3d 1096, 1100 (10th Cir. 2007). In Oklahoma, claim preclusion "bars the parties (or their privies) from relitigating *not only* the adjudicated claim, but also any theories or issues that were actually decided *together with those which could have been decided in that action*." McDaneld v. Lynn Hickey Dodge, Inc., 979 P.2d 252, 255-56 (Okla. 1999) (emphasis in original). In other words, claim preclusion, also known as *res judicata*, "bars not only relitigation of those issues that were or might have been offered to sustain the claim, but also all defenses that were or might have been offered to defeat the claim." Grossman v. Fannie Mae, No. CIV-10-329-L, 2010 WL 3895757, at *3 (W.D. Okla. Sept. 30, 2010) (finding the plaintiff's claims in a second action following a foreclosure action were barred by the doctrines of issue and claim preclusion), aff'd 431 Fed.Appx. 699 (10th Cir. 2011).

It is clear to this court, as it was to the Grossman court, that Plaintiff's First Amended Complaint is comprised of claims and issues that were actually decided or could have been decided in the foreclosure action. Id. at *4. The foreclosure action in state court was filed on October 9, 2012. Plaintiff was represented by counsel in the foreclosure action and filed defenses and counterclaims. Plaintiff was notified that Carrington was her new mortgage servicer in August of 2014. Docket No. 62, Exh. 1, p. 65. The District Court of Muskogee

11

County issued its final judgment on the merits on January 19, 2016. In the span of more than three years during the foreclosure action, Plaintiff had a full and fair opportunity to litigate the claims she now brings in this court. In fact, Plaintiff did raise many of the same arguments she raises here in the state-court action, including that BANA failed to follow proper loss mitigation procedures, failed to follow federal laws and regulations that govern mortgage loan servicers and failed to acknowledge her request for mortgage assistance. See id. at 36-37 and 66-72. Like the plaintiff in Grossman, Plaintiff now essentially seeks to undermine the consequences of the foreclosure action. Id. Plaintiff's claims against both BANA and Carrington are thus barred by the doctrine of claim preclusion.[5]

Moreover, under the doctrine of issue preclusion, also known as collateral estoppel, in Oklahoma, "once a court has decided an issue of fact or law necessary to its judgment, the same parties or their privies may not relitigate that issue in a suit brought upon a different claim." Valley View, 497 F.3d at 1105 (citing State ex rel. Dept. of Transp. v. Little, 100 P.3d 707, 720 n. 47 (Okla. 2004)). "An issue is actually litigated and necessarily determined if it is properly raised in the pleadings, or otherwise submitted for determination, and judgment would not have been rendered but for the determination of that issue." Oklahoma Dept. of Public Safety v. McCrady, 176 P.3d 1194, 1199 (Okla. 2007). The issue preclusion doctrine may only be invoked if the plaintiff had a "full and fair opportunity" to litigate the critical issue in the previous case. Id. There need only be "a final determination of a material issue common to both cases." Id. Issue preclusion "bars relitigation of issues necessary to the state court's foreclosure

---

[5] Additionally, the court notes that in Oklahoma, the following counterclaims are compulsory: "any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." 12 OKLA. STAT. § 2013. Plaintiff's claims clearly arose out of the same transaction or occurrence that was the subject matter of the foreclosure action.

12

judgment—regardless of whether those issues were correctly decided." Calloway v. Bank of Am. Corp., 646 F. App'x 578, 581 (10th Cir.), cert. denied, 137 S. Ct. 482 (2016).

As noted above, Plaintiff argued in the foreclosure action that BANA failed to follow proper loss mitigation procedures, failed to follow federal law and regulations that govern mortgage loan servicers and failed to acknowledge her request for mortgage assistance. Those issues were not decided in her favor. The elements of issue preclusion have been met here as to both BANA and its privy Carrington.

**CONCLUSION**

Accordingly, the motions to dismiss [Docket Nos. 37 and 62] are hereby GRANTED.[6] This action is hereby DISMISSED.

**IT IS SO ORDERED** this 6th day of February, 2017.

_____
**THE HONORABLE RONALD A. WHITE
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF OKLAHOMA**

---

[6] The court *sua sponte* ordered Plaintiff to amend her complaint on June 13, 2016. Plaintiff filed her First Amended Complaint on July 21, 2016. The court finds that further amendment would be futile.